[S. F. No. 9016. In Bank.—December 30, 1919.]

ARCHIBALD HEESOM WALKER, Appellant, v. HAR-
BOR BUSINESS BLOCKS COMPANY (a Corpora-
tion), Respondent.

[1] VENDOR AND VENDEE—STREET IMPROVEMENTS BY VENDOR—NOTI-
FICATION OF INABILITY TO PERFORM WITHIN CONTRACT TIME—TIME
OF COMMENCEMENT OF ACTION TO RECOVER PAYMENTS—RIGHT OF
VENDEE.—Where the vendor under a contract for the sale of real
estate notified the vendee before the expiration of the time for
payment of the final installment on the purchase price that it
would be impossible for the vendor within the time mentioned
in the contract to make certain street improvements as required
by the terms of the contract, such refusal was tantamount to a
declaration on the part of the vendor that it could not and would
not perform its obligation within the prescribed time, and it was
not necessary for the vendee to defer bringing action to recover
money paid on account of such breach until the full time had
expired during which the vendor might have made the improvements.

[2] CONTRACT—ABANDONMENT PRIOR TO EXPIRATION OF PROVIDED TIME.
The failure or refusal to perform an obligation assumed expressly
or by implication, or the voluntary abandonment of the contract,
releases the obligee from the duty of making demand, and perform-
ance or tender, and justifies him in abandoning the contract with-
out waiting until the contract period expires, and gives him immediate
right of action for the breach and to rescind.

[3] VENDOR AND VENDEE—INVALID EXTENSION OF TIME FOR MAKING
IMPROVEMENTS.—In view of section 1698 of the Civil Code which
provides that a contract in writing may be altered by a contract in
writing, or by an executed oral agreement, and not otherwise, and
of subdivision 1 of section 1624 of such code, and of subdivision 1
of section 1973 of the Code of Civil Procedure, which provide that
a contract which by its terms is not to be performed within a year
is invalid unless a note or memorandum thereof be in writing and
subscribed by the party to be charged, the time within which the
vendor under a contract of sale had to make certain improvements
was not extended two years by a draft for such an extension
prepared by the vendee but not signed by him.

[4] CONTRACT—WRITING—ORAL WAIVER.—Conditions of a contract in
writing may be waived orally.

[5] VENDOR AND VENDEE—EXTENSION OF TIME FOR MAKING IMPROVE-
MENTS—EVIDENCE—ABSENCE OF WAIVER.—An extension of time for
the performance of street improvement work by a vendor under a
contract of sale is not agreed to or performance of the work

waived, where the vendee promptly repudiated and rejected letters of the vendor proposing an extension.

[6] CONTRACT — BREACH OF CONDITION — ABANDONMENT — WHEN NOT JUSTIFIED.—Where the stipulation does not go to the root of the contract so that a failure to perform it would render the performance of the rest of the contract a thing different in substance from what was contracted for, there is ordinarily not such a breach as will authorize an abandonment of the contract by the other party, nor is there a fatal breach in cases where the nonperformance of one of the conditions does not materially impair the benefit from the performance of the others, and the loss occasioned, by the breach of the particular condition is capable of compensation in damages.

[7] VENDOR AND VENDEE—FAILURE TO MAKE STREET IMPROVEMENTS—RIGHT OF RESCISSION OF CONTRACT.—In view of section 1689 of the Civil Code which provides that a party to a contract may rescind it, if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails, in whole or in part, or, if such consideration, before it is rendered to him, fails in a material respect, from any cause, a vendee under a contract of sale may rescind on the failure of the vendor to make street improvements, since the improvements were a material part of the consideration.

[8] ID.—AGREEMENT TO IMPROVE STREETS—AGREEMENT TO PAY PRICE—CONCURRENT CONDITIONS.—Where under a contract of sale the vendor was given the same length of time to complete street improvement work as was given to the vendee to make payments of the installments of the purchase price, the agreement of the vendor was a condition concurrent with the agreement to make payment of the last installment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge. Reversed.

The facts are stated in the opinion of the court.

B. M. Jackson for Appellant.

J. F. Riley for Respondent.

LAWLOR, J.—The appeal is from a judgment entered in favor of the defendant in an action brought by the plaintiff to recover certain money paid to the defendant on the monthly installment plan, under a contract for the purchase of two lots, on the ground that the defendant had breached the contract, in that it had failed to put in the street improvements as agreed within the time specified. After judgment the

plaintiff moved for a new trial, which motion was denied. The plaintiff thereupon took this appeal.

The plaintiff sued on his own behalf and as the assignee of Hannah Maria Walker, his sister, to recover the aggregate amount of $1,854.26, which was made up of the sum of $1,188.10, alleged to have been paid in installments by the plaintiff to the defendant upon an agreement for the purchase of a certain lot, in Contra Costa County, and of the further sum of $666.16 which the plaintiff alleged had been paid the defendant by Miss Walker, upon a like agreement for the purchase of a similar lot, it being alleged that the defendant had failed to carry out the terms of the agreement to be performed by it, to wit, to put in certain street improvements. Both of these contracts were dated December 1, 1913. They are identical in form, each providing for certain monthly installments to be paid by the vendee thereunder, and each containing the provision that "The final payment shall be made within forty-two months from the date of this contract," which would make the date of final payment June 1, 1917. These agreements also each contain the following provision:

"The seller guarantees, that it will, within the period named in this contract as the time within which the property herein described may be paid for, plow and roll all streets opened by the seller within the boundaries of the property described in the map above referred to, to the center of said streets, in front of each lot in said tract, either oil or macadamize same to said center and lay cement sidewalks, put in curbing, sewers and water-pipe at its expense."

The amended complaint contains four counts. In the first of these the plaintiff alleges the making of said agreement between the defendant and the plaintiff, and the payment by the plaintiff of the installments due thereon up to the eleventh day of May, 1917, making a total of $1,188.10. The complaint then alleges that on or about May 17, 1917, the plaintiff was notified by the defendant that the work to be done by it under the above-quoted clause of the contract had not been performed; that on May 21, 1917, the plaintiff tendered and offered to pay the defendant the balance of the purchase money due from him for said property, but that the defendant then and there in-

formed him that the improvements to be made by it as provided in said contract could not and would not be made in any shorter time than two years after the time specified for their completion under the said contract; that plaintiff thereupon demanded the repayment of the money already paid by him as aforesaid to the defendant, which repayment the defendant refused to make.

The second count in the amended complaint is simply one for money had and received, in the amount of $1,188.10, by the defendant for plaintiff's use and benefit.

The third and fourth counts repeat the allegations of the former two counts with respect to the agreement made by the defendant with plaintiff's sister, who is alleged to have assigned her cause of action to plaintiff.

In its answer the defendant denied any indebtedness whatever to the plaintiff.

At the trial the plaintiff testified, in his examination in chief, to the facts substantially as set forth in the complaint. While testifying he produced certain letters which had been sent to him and Miss Walker during the month of May, 1917. The first of these was addressed to him and was dated May 14, 1917. It referred to his contract of purchase, and stated that "At your request" the time of payment on said contract was to be extended for a period amounting to nearly three years. That is to say, he was to continue his monthly payments at the regular rate of $15 until the balance of the purchase price was paid. Upon receipt of this letter by him, and a similar one by his sister, the plaintiff testified that, on or about May 17, 1917, he and Miss Walker went to the office of the defendant and there stated to Mr. G. W. Smith, the president and manager, that they had not requested or agreed to any such extension of time as was stated in the letters, and that they wanted their money back because the defendant had not kept the agreement in respect to the work of improvement to be performed. On the following day the plaintiff, as he testified, received another letter from the defendant, as did also Miss Walker, again purporting to extend the time of payment, but limiting the extension on this occasion to a period of two years, also extending the time for completing the said work of improvement for a like period. Nothing was said in either of these letters, however, to indicate that the

extension of time was being made at the request of the plaintiff and his assignor. This extension, the plaintiff testified, had also been repudiated by himself and his sister on May 18, 1917. On May 21, 1917, according to the testimony of the plaintiff and of certain witnesses introduced in his behalf, he and his assignor went again to the office of the defendant and this time tendered the entire amount due on both contracts, and then and there demanded of the defendant, through its president and manager, that it make deeds to the lots, improved according to the terms of the contracts. The defendant, through its president and manager, declined to make the deeds at that time for the reason that the improvements had not in fact been made. Thereafter, namely, on June 1, 1917, the plaintiff brought this action.

It appears, however, from the cross-examination of the plaintiff and the direct testimony of Mr. Smith, that upon receipt by the plaintiff of the first letter from the defendant stating that an extension upon the contract for a period approximating three years had been granted at the request of the plaintiff, he had gone to the office of the defendant, where a discussion arose as to the work to be done and the time to which the agreements should be extended; that at such interview the plaintiff had produced a form of extension which he himself had written and which Mr. Smith, acting for the defendant, agreed to adopt; that this tentative form was left with Mr. Smith as the basis of an extension which he was to prepare and send to the plaintiff and Miss Walker. This form of extension reads as follows:

"On account of the failure of the Harbor Business Blocks Company to carry out the terms of the clause named in said contract, to-wit. . . .

"The said Harbor Business Blocks Company hereby extends the time of payment as follows . . . and guarantees that it will within . . . months from date plow and roll all streets, etc., at its expense in accordance with the terms of said contract." This document was neither dated nor signed.

An extension in substantially the language employed in the above form was prepared by Mr. Smith, on behalf of the defendant, and sent to the plaintiff and his sister, through the mails, the plaintiff having given the names and

addresses of himself and Miss Walker on the occasion of his visit to the office of the defendant on May 14, 1917.

The court found that all the allegations of the complaint were untrue except the allegation as to the corporate existence of the defendant, and stated as a conclusion of law that the plaintiff take nothing in this action and the defendant is entitled to judgment against the plaintiff for its costs.

1. The respondent contends that the decision of the trial court can be upheld upon the ground that the demand for the deeds to the lots, together with their improvement, was premature, and also that appellant had no right to sue until after June 1, 1917. We think that the position thus taken by the respondent cannot be maintained. It is clear, from the record before us, that the defendant corporation, through its president and manager, had notified the plaintiff and his assignor that it would be impossible to put in the improvements according to the terms of the agreement within the time specified. [1] This was tantamount to a declaration on the part of the president that the corporation could not and would not perform its obligation under the contract within the time prescribed therein. Such being the case, it was not necessary for the plaintiff to defer bringing his action until the full time had expired during which the defendant might have made the improvements. The rule is thus laid down in 7 American and English Encyclopedia of Law (second edition), at page 150: [2] "The failure or refusal to perform an obligation assumed expressly or by implication, or the voluntary abandonment of the contract, releases the obligee from the duty of making demand, and performance or tender, and justifies him in abandoning the contract without waiting until the contract period expires, and gives him an immediate right of action for the breach and to rescind." (See, also, *Wolf* v. *Marsh,* 54 Cal. 228; *Burks* v. *Davies,* 85 Cal. 110, [20 Am. St. Rep. 213, 24 Pac. 613]; *Cabrera* v. *Payne,* 10 Cal. App. 675, [103 Pac. 176].)

2. Respondent contends, also, that the finding of the court, which is, in effect, that the defendant was not indebted to the plaintiff at the time specified in the complaint, can be upheld on the ground that a new agreement had been entered into between the parties on or about May 17, 1917,

whereby the performance of the mutual obligations under the original contract was extended for a period of two years. In support of this contention the respondent relies on the fact that the plaintiff went to the office of the defendant corporation on May 17, 1917, and left the tentative draft for an extension of time, which we have set out above, and which Mr. Smith used as a basis for the letters which were sent to the plaintiff and his assignor on that day. This transaction, respondent argues, furnished sufficient evidence upon which the trial court might have based a finding that the minds of the parties had met and that the new contract had been entered into between them. Without going into the realm of speculation as to what the trial court might have done, it is sufficient to point out that the court did not as a matter of fact make such a finding. But even if the trial court had concluded that a new contract had been entered into between the parties, such a finding could not be upheld. Section 1698 of the Civil Code provides that "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." The evidence shows without conflict, that a new contract was not entered into between the parties whereby the terms of the original contract were altered. Nor was there an "executed oral agreement." While there is a conflict in the evidence as to whether there was an executory oral agreement that there should be an extension of time for both parties to perform under the contract, the trial court made no finding on this point, and even if this conflict should be resolved in favor of the defendant such a finding would avail the defendant nothing, since the alleged agreement was for a period of two years. Subdivision 1 of section 1624 of the Civil Code, and subdivision 1 of section 1973 of the Code of Civil Procedure, provide that a contract which by its terms is not to be performed within a year from the making thereof is invalid, unless a note or memorandum thereof be in writing and subscribed by the party to be charged. [3] While it may be conceded that the proposed form of extension which was left by plaintiff at the office of the defendant on May 17, 1917, was, in the contemplation of the statute of frauds, such a memorandum, it is clear, nevertheless, that it does not meet the requirements of the statute for the reason that it was not signed by the party to be charged.

3. Respondent contends further that the plaintiff and his assignor waived the time of performance of the work on the part of the defendant. [4] That the conditions of a contract in writing may be waived orally is too well established to require citation of authority. But the record before us establishes the fact by uncontradicted testimony that the plaintiff and his assignor did not waive the performance of the work of improvement on the part of the defendant. There is a conflict in the testimony as to what conversation took place between the plaintiff and Mr. Smith on the two occasions that the former visited the office of the defendant. But the point in the proceedings about which there is no conflict, and the element which we think is determinative of the whole matter, is that the letters which were addressed to the plaintiff and his assignor on the two occasions proposing an extension of time were on each occasion promptly repudiated and rejected by them. [5] It cannot, therefore, be said that the plaintiff and his assignor agreed to an extension of time or waived the performance of the work to be done by the defendant.

4. Another point urged by respondent in support of the action of the trial court in the premises is that the plaintiff has mistaken his remedy in that the alleged cause of action is properly one for damages and not one for rescission, for the reason that the agreement to put in improvements is an independent covenant not going to the root of the contract. Respondent has cited a number of cases in support of this contention, and it must be conceded to be elementary that [6] "where the stipulation does not go to the root of the contract so that a failure to perform it would render the performance of the rest of the contract a thing different in substance from what was contracted for, there is ordinarily not such a breach as will authorize an abandonment of the contract by the other party. Neither is there a fatal breach in cases where the nonperformance of one of the conditions does not materially impair the benefit from the performance of the others and the loss occasioned by the breach of the particular condition is capable of compensation in damages." (3 Elliott on Contracts, sec. 2046, p. 230.) In all of the cases relied upon by respondent in support of the contention that the covenant, the breach of which is complained of herein, comes within the rule just quoted, the courts have

construed the stipulations involved as being independent and not dependent or concurrent. Section 1689 of the Civil Code provides that a party to a contract may rescind it "if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails, in whole or in part"; and also "if such consideration, before it is rendered to him, fails in a material respect, from any cause." *Blahnik* v. *Small Farms Improvement Co., ante,* p. 379, [184 Pac. 661], was an action to rescind a contract for the purchase of land upon the ground that the vendor had breached the covenant which provided that "The seller agrees that it will have the roads in said division 'R' constructed during the fall of 1913 after the rains or when the ground is able to be worked, and construct the necessary bridges." The identical point was there raised which is now under consideration here. In passing upon the point, Mr. Justice Shaw, speaking for the court, said: "The contract shows that in consideration of the price to be paid the plaintiffs were to have the lots described, with roads constructed leading thereto for access and egress. *That the roads were a material part of the consideration which they were to receive is apparent.* The complaint alleges that the defendant failed and refused to render this consideration within the time fixed in the contract. That part of the consideration had failed through the defendant's fault. Where the consideration fails in whole or in part through the fault of the party whose duty it is to render it, the other party may rescind. Civ. Code, sec. 1689." (Italics ours.)

[7] Construing the contract herein as a whole we are of the opinion that the consideration for which the plaintiff and his assignor agreed to pay the sums specified was the lots improved according to the terms of the contract. While it appears from the testimony of Mr. Smith that a large part of the work had been done; that all of the streets in the tract had been opened and that the plowing, rolling, and grading had been done thereon; that there had been constructed "a main sewer for two blocks down 23d Street, and all the laterals in the upper part of the tract surrounding this entire block in which the lots are located," and that these sewers were connected with an outlet; he also testified on cross-examination that there was a large part of the work

which had not been done, namely, that there had been no water-pipes, sidewalks, or curbing put in. It is thus apparent that there was a failure of the consideration of the obligation to pay to the extent that the lots were less valuable without the improvements than with them; also, that it was a failure of the consideration "in a material respect" before it was rendered, that is to say, before the title was conveyed. The cost of these improvements would certainly amount to a considerable sum, and the value such improvements would add to the lots must be presumed to be a material part of the consideration to the vendees.

[8] Furthermore, we think that the agreement to put in the improvements was a condition concurrent with the agreement to make payment of the last installment. As we have seen, the latter was to be made within forty-two months from the date of the contract. The seller was given the same length of time to complete the improvements. Fairly construed, it must be held that the final payment of the purchase price and the completion of the work were due on the same day.

The judgment is reversed.

Olney, J., Shaw, J., Lennon, J., Angellotti, C. J., and Wilbur, J., concurred.