[Civ. No. 7717.  Second Appellate District, Division Two.—April 14, 1933.]

DOROTHY O. MERIGOLD et al., Appellants, v. ERNEST E. GAGNON, Respondent.

Neal E. Dow for Appellants.

Leonard S. Barnes and Victor H. Dixon for Respondent.

WORKS, P. J.—This is an action for the recovery of money. Defendant had judgment and plaintiffs appeal.

I. B. Rankin entered into a contract with Gagnon whereby the former agreed to buy and the latter to sell certain lots of real property. The deal was in part really an exchange, for Rankin conveyed to Gagnon certain real property in part consideration for the lots he agreed to ''buy''. Rankin conveyed, by a paper termed an assignment, all his ''rights, title and interest'' in the lots to the Merigolds, and in the document the parties requested Gagnon to enter into a contract to sell the lots to the Merigolds. This new agreement was executed, and the Merigolds were thus substituted for Rankin as buyers of the lots. The agreement acknowledged the receipt of the sum of $3,735 ''cash, or property exchange credited, upon the execution of this agreement'', as part payment for the lots. The Merigolds agreed to pay, in addition, installments of $50 the month until a certain total sum

had been paid to Gagnon. They paid one monthly install-ment and no more. The action was commenced for the recovery of $3,785, that being the total of the $3,735 and the one installment of $50. The trial court found that the Merigolds had paid only the latter amount, and they contend that the finding was not supported by the evidence.

We think the finding was not only sustained by the evidence but that the court could not have found otherwise. The $3,735, as the evidence disclosed without dispute, repre-sented the land conveyed to Gagnon by Rankin when the contract of sale between them was executed. Under these circumstances the amount named could not be recovered by the Merigolds as cash, upon a breach of their contract by Gagnon, nor could it have so been recovered by Rankin, upon a breach of his original contract by Gagnon. Rankin could have required nothing more than a reconveyance of the land which was originally his, or if a reconveyance were impossible, a judgment for the reasonable market value of the land at the time he conveyed it to Gagnon. All this is settled by *Blahnik* v. *Small Farms Co.*, 181 Cal. 380 [184 Pac. 661]. We think the Merigolds are in no better posi-tion as to this matter under their agreement with Gagnon than Rankin would have occupied under his contract with that individual. Notwithstanding this situation, the Meri-golds prayed only a money judgment; and not only so, but they offered no evidence as to the value of the Rankin land at the time it was conveyed to Gagnon, nor at any time. As we have already observed, the finding of the trial court was actually demanded by the state of the evidence.

But the Merigolds were not even entitled to recover the $50 installment paid by them. They breached their agreement to buy when they ceased payment of the monthly installments. They contend that this cessation was justified for the reason that Gagnon had already broken the agree-ment by a failure to perform covenants which he had agreed to perform. The Merigolds, in making this contention, pre-sent two provisions of the agreement. One of these read: "Improvements to consist of streets graded, graveled or oiled, water to the property." The other ran: "The seller further agrees to furnish, or cause to be furnished, water to the property and receive compensation from the property

owners in proportion to the quantity used for domestic and irrigation purposes . . . ''

█ The first of these clauses was so general that it would have been most difficult for the Merigolds to prove that it had not been complied with. Surely, it was so uncertain in its terms that it could not have been enforced if this were a suit for specific performance. Be that as it may, however, evidence of several witnesses was produced by Gagnon to the effect that all the streets in the tract containing the lots were graded, graveled or oiled.

█ As to the second of the clauses, the Merigolds were never in need of water for their lots for either domestic or irrigation uses. They erected no buildings upon them nor did they plant them to any kind of trees or crops. The lots were mere vacant land. The Merigolds contend that they required water for the purpose of conducting building operations upon the lots, but no such use was contemplated by the agreement. Water for such a purpose would be devoted to neither a domestic nor an irrigation use. Further, a witness testified that he had a water supply near at hand, sufficient to supply needful water to his own land and to the Gagnon tract as well, that Gagnon had arranged with him to supply water to the tract until Gagnon could develop a water supply of his own, and that water· could have been furnished by him to the Merigold lots at any time upon twenty-four hours' notice.

Judgment affirmed.

Craig, J., and Archbald, J., *pro tem.*, concurred.